**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MATTHEW ALVARADO, # B-17199,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 14-cv-832-JPG** |
| | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **CORRECTIONS, S.A. GODINEZ,** | ) | |
| **WEXFORD HEALTH SERVICES,** | ) | |
| **DR. FURLONG, DR. LARSON,** | ) | |
| **and DR. SANDHU,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Matthew Alvarado, an inmate in Big Muddy River Correctional Center ("Big Muddy"), brings this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that Defendants have refused to provide him dentures for over two years, which has made it difficult for him to eat and caused him a great deal of pain and discomfort.  (*See* Doc. 1).  Plaintiff asserts claims under the Eighth Amendment, as well as Illinois state law.  In addition to his complaint (Doc. 1), Plaintiff has filed a motion for a temporary restraining order and/or an order for preliminary injunction (Doc. 5) and a memorandum of law in support of the motion (Doc. 6). Plaintiff seeks monetary damages and immediate injunctive relief.

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.  Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to

dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  The motions for temporary and preliminary injunctive relief will be considered in conjunction with the requisite preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.[1]

## The Complaint

Plaintiff entered the custody of the Illinois Department of Corrections ("IDOC") on May 8, 2012. (Doc. 1, p. 5).  At that time, Plaintiff did not have any teeth, nor did he have dentures. (*Id*.)  Prior to his incarceration, Plaintiff had been fitted for dentures, but he was unable to retrieve them before being taken into custody. (*Id*.)  While at the Stateville Receiving Center, he was seen by a dentist who told him that he would be able to get dentures once he was placed at a correctional facility.  Plaintiff was then sent to Dixon Correctional Center ("Dixon") where he submitted several requests to see the dentist. (*Id*.)  However, before he was able to be seen by a dentist at Dixon, he was transferred to Big Muddy on August 1, 2012.

Upon his arrival at Big Muddy, Plaintiff immediately submitted a request to see a dentist, but was not seen until February 22, 2013. (*Id*.)  It is unclear from the pleadings what transpired at this appointment, but it appears that Plaintiff's dental issues continued.  After submitting several more requests to see the dentist due to the pain and difficulty Plaintiff was having with chewing, Plaintiff was seen again on June 13, 2013 by Defendant Furlong, a dentist employed by Defendant Wexford Health Services, Inc. ("Wexford").  Furlong explained to Plaintiff that IDOC's dental policy requires inmates who enter IDOC with no teeth to pay a $250 lab fee to get dentures.  (*Id*. at 6).  Plaintiff explained that he was indigent and had no one who could help him

---

[1] The amount and timing of the process due is what distinguishes the two preliminary remedies. *See Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006); *see also* FED.R.CIV.P. 65*;H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 844-45 (7th Cir. 2012).

pay the fees.  Furlong maintained that there was nothing he could do, but he told Plaintiff that he could request medical approval for dentures from one of the medical doctors. (*Id.*)  Furlong also refused to prescribe any pain medication, despite Plaintiff's insistence that chewing caused him a great deal of pain and discomfort.

Following this appointment, Plaintiff filed a grievance on June 13, 2013 regarding Defendant Furlong's denial of Plaintiff's request for dentures.  The grievance was denied on August 22, 2013 and stated, "Per policy offenders who are admitted in I.D.O.C. without teeth are responsible for the cost of Dentures unless otherwise determined by a Medical Doctor.  There is currently no documentation in offender's Medical File ordering Dentures from a Medical Doctor."[2] (*Id.*, Ex. B).  Plaintiff subsequently filed an appeal with the Administrative Review Board. (*Id.*, Ex. C).  In a response dated April 25, 2014, Plaintiff's appeal was denied on the grounds that "the issue was appropriately addressed by the facility Administration" and Plaintiff's request for "monetary compensation" was "beyond the scope of this office." (*Id.*)  Defendant Godinez, Director of IDOC, signed the report and concurred with the Board's decision.

While Plaintiff's grievance was on appeal, Plaintiff continued experiencing problems related to his lack of teeth and inability to properly chew his food. (Doc. 5, p. 4).  He made several requests to see a dentist and was finally seen by Defendant Sandhu, a dentist employed by Defendant Wexford, on March 4, 2014.  Defendant Sandhu advised Plaintiff that he would have to pay for the dentures.  (Doc. 1, p. 8).  Plaintiff again explained that he was indigent and had no ability to pay.  There is a note in Plaintiff's medical records dated March 11, 2014, which

---

[2] Plaintiff's complaint notes that according to IDOC Administrative Directive 04-03-12, removable dentures "shall be provided on a case by case basis as determined clinically necessary *by the dentist*." (Section 6(a)) (emphasis added).  Plaintiff asserts that the requirement for medical approval by a "Medical Doctor" contravenes IDOC's own policy.

states that Defendant Sandhu had called to inquire about the facility's policy regarding payment of dentures for indigent inmates.  (Doc. 1, Ex. E).  The note is not entirely decipherable, but it appears that Defendant Sandhu requested that someone be consulted on the matter.  The note further states that it was suggested that a dentist or Defendant Larsen (a medical doctor) obtain weight checks on Plaintiff.  (*Id.*)  No follow-up is noted.  Plaintiff asserts that Defendant Sandhu recently told Plaintiff that he would order Plaintiff dentures if he had enough time to process them, but he was unable to given Plaintiff's September 30, 2014 release date from IDOC. (Doc. 5, p. 4).

Plaintiff further asserts that after submitting several sick call requests, he was seen by Defendant Larson, a medical doctor employed by Defendant Wexford, on March 13, 2014. (Doc. 1, p. 8).  Plaintiff informed Defendant Larson of the problems he was having (inability to chew properly, headaches, bleeding gums, and sores in his mouth) and again requested dentures. Despite these problems, Defendant Larson refused to recommend dentures for Plaintiff or to provide Plaintiff with any pain medications.  (*Id.*)  He also refused to place Plaintiff on a soft foods diet, instead insisting that "the food in the chow hall is soft enough." (*Id*. at 9).

## Discussion

Based on the allegations and claims in the complaint, the Court finds it convenient to frame Plaintiff's claims as follows:

**Count 1:**      **Defendants have been deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.**

**Count 2:**      **Defendants Wexford, Furlong, Larson, and Sandhu's failure to provide Plaintiff with dentures and pain medication constitutes medical negligence under the law of Illinois.**

**Count 1: Eighth Amendment Claim**

To plead an Eighth Amendment medical needs claim, a complaint must allege two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *See Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir.2006); *see also Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011). The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). To establish that an official acted with deliberate indifference, a plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). Specifically, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The Seventh Circuit has recognized that dental care, specifically, is "one of the most important medical needs of inmates." *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) In *Wynn*, the Seventh Circuit found that an inmate—who alleged that without dentures he was unable to chew his food and suffered bleeding, headaches, and disfigurement—had sufficiently demonstrated a serious medical need for dentures. *Id*.

Plaintiff alleges that he has been unable to properly chew his food for two years. As a result, the very act of eating is painful. In addition, Plaintiff claims that his inability to properly chew his food has interfered with proper digestion, which has caused him further pain and discomfort. Thus, Plaintiff's allegations suffice to meet the objective showing that he has a

serious medical condition.  The remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various Defendants.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

### Medical Defendants

At this stage, the complaint sets forth facts sufficient to support Plaintiff's allegation that Defendants Furlong, Larson, and Sandhu acted with deliberate indifference to Plaintiff's serious dental issues and the health problems he was encountering as a result of not having dentures. The Court does note that the complaint suggests that Defendant Sandhu, unlike Defendants Furlong and Larson, may have made some attempt to address Plaintiff's dental needs, but more facts are necessary to determine whether his efforts were enough to relieve him of liability. Therefore, at this juncture, Plaintiff may proceed on his claim for monetary relief against Defendants Furlong, Larson, and Sandhu in their individual capacities.

### Administrative Defendants

As for Defendants IDOC, Wexford, and Godinez, Plaintiff asserts that they implemented and enforced policies and procedures that prevented Plaintiff from accessing necessary dental care in violation of the Eighth Amendment.  Plaintiff asserts that IDOC policy requires *only* inmates who enter its custody already without any teeth to pay $250.00 for dentures.  Perhaps this is not the actual policy; or maybe it is and there is a rational explanation for this differential treatment.

Plaintiff, however, cannot maintain a suit for damages against IDOC, because it is a state agency.  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).  As such, IDOC will be dismissed with prejudice.

Plaintiff may, however, proceed on his claim in Count 1 against Defendants Wexford and Godinez.  Defendant Wexford is a corporation that provides medical care at the prison on a contractual basis. If Plaintiff's allegation that Wexford's policies created conditions that infringed upon his constitutional rights proves to be true, Plaintiff may be able to establish deliberate indifference on the part of Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation).  Accordingly, the claim against Defendant Wexford Health Sources will not be dismissed at this point in the litigation.

Likewise, Plaintiff alleges that Defendant Godinez, as Director of IDOC, is personally liable because he was not only aware of, but condoned, policies that deprived Plaintiff of his rights under the Eighth Amendment.  At this juncture, it is unclear whether IDOC's denture policy does, in fact, violate Plaintiff's constitutional rights.  Therefore, it would be premature to dismiss Defendant Godinez at this time.  Moreover, typically, in a claim for injunctive relief, the government official who is responsible for carrying out the requested relief would be named as a

defendant in his or her official capacity.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir.

2011).  Accordingly, Plaintiff may proceed on his claims for relief against Defendant Godinez in

both his individual capacity and his official capacity as Director of IDOC.

**Count 2: Medical negligence claim**

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in

which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other

healing art malpractice," must file an affidavit along with the complaint, declaring one of the

following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified

health professional who has reviewed the claim and made a written report that the claim is

reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the

affiant was unable to obtain such a consultation before the expiration of the statute of limitations,

and affiant has not previously voluntarily dismissed an action based on the same claim (and in

this case, the required written report shall be filed within 90 days after the filing of the

complaint); or (3) that the plaintiff has made a request for records but the respondent has not

complied within 60 days of receipt of the request (and in this case the written report shall be filed

within 90 days of receipt of the records).  *See* 735 Ill. Comp. Stat. § 5/2-622(a) (as amended by

P.A. 90-579, effective May 1, 1998).[3]  A separate affidavit and report shall be filed as to each

defendant.  *See* 735 Ill. Comp. Stat. § 5/2-622(b).

Plaintiff alleges that Defendants Wexford, Furlong, Larson, and Sandhu's failure to

provide him with dentures and pain medication constitutes medical negligence under the law of

Illinois.  However, Plaintiff has not filed the requisite affidavits under Illinois law for any of

---

[3] P.A. 94-677, effective August 25, 2005, which amended 735 ILL. COMP. STAT. § 5/2-622(a) and other portions of the Illinois statute governing health care and medical malpractice actions, was held to be unconstitutional in its entirety in *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010).  As a result of *Lebron*, the previous version of the statute is now in effect.  *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010).

these Defendants.  Failure to file the required affidavit is grounds for dismissal of Plaintiff's negligence claim.  *See* 735 Ill. Comp. Stat. § 5/2-622(g); *Sherrod*, 223 F.3d 605, 613 (7th Cir. 2000).  However, whether such dismissal should be with or without prejudice is up to the sound discretion of the Court.  *Sherrod*, 223 F.3d at 614.  "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, 2007 WL 1655799 *4-5 (S.D. Ill. 2007).  Therefore, at this time, Plaintiff's medical negligence claim shall be dismissed without prejudice.

In summary, Plaintiff may proceed on his Eighth Amendment claim (Count 1) against Defendants Furlong, Larson, Sandhu, Wexford, and Godinez in their individual capacities. Plaintiff may also proceed on his request for injunctive relief against Defendant Godinez, in his official capacity, as Director of IDOC.  Plaintiff's medical negligence claim (Count 2) against Defendants Furlong, Larson, Sandhu, and Wexford is dismissed without prejudice.  Defendant IDOC is dismissed from this matter with prejudice.

**Motion for Temporary Restraining Order and Preliminary Injunction**

Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 5) seeks an Order requiring IDOC to: (1) immediately arrange for Plaintiff to be seen by an orthodontist to obtain an evaluation of Plaintiff's dental needs and prescribe a course of action to restore Plaintiff's ability to chew his food; and (2) attend a hearing to address Plaintiff's request for dentures. (Doc. 5, p. 1).

A temporary restraining order ("TRO") is an order issued without notice to the party to

be enjoined that may last no more than 14 days. FED.R.CIV.P. 65(b)(2).  A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED.R.CIV.P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

In order to obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007).  If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction.  *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Upon preliminary review, Plaintiff's motion addresses each of these requirements. Plaintiff has been allowed to proceed with his claim of deliberate indifference to a serious medical need against Defendants Furlong, Larson, Sandhu, Godinez, and Wexford.  He claims that eating without dentures is painful and has caused him to suffer sores on his gums, headaches, and problems with his digestive system.  Furthermore, he claims that the lack of dentures is causing facial disfigurement and that if he delays any longer he may never be able to be fitted for dentures.

Regardless, the Court's preliminary review dictates that Plaintiff's request for injunctive relief in the form of either a temporary restraining order or a preliminary injunction deserves prompt consideration.  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's

motion for a TRO/Preliminary Injunction (Doc. 5) is hereby **REFERRED** to United States Magistrate Judge Philip M. Frazier, who shall resolve the request for injunctive relief as soon as practicable.  Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to **United States Magistrate Judge Frazier** for further consideration.

Plaintiff's motion for service of process at government expense (Doc. 4) is unnecessary and, therefore, **DENIED** as **MOOT**.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff may proceed on his claim for damages against Defendants **FURLONG, LARSON, SANDHU, GODINEZ,** and **WEXFORD** on **COUNT 1**.  Defendant **GODINEZ** will remain as a defendant also in his official capacity for purposes of Plaintiff's request for injunctive relief.  Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's medical negligence claim **(COUNT 2)** against Defendants Wexford, Furlong, Larson, and Sandhu is **DISMISSED** without prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant **FURLONG, LARSON, SANDHU, GODINEZ,** and **WEXFORD**.  The Clerk shall issue the completed summons, and prepare a service packet for Defendants consisting of: the completed summons, the completed form USM-285, a copy of the complaint (Doc. 1), motion for TRO/Preliminary Injunction (Doc. 5), the memorandum in support of the motion (Doc. 6) and this Memorandum and Order.  The Clerk

shall deliver the service packets for each Defendant to the United States Marshal Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL personally serve** upon each Defendant, the service packets containing the summons, form USM-285, a copy of the complaint (Doc. 1), motion for TRO/Preliminary Injunction (Doc. 5), the memorandum in support of the motion (Doc. 6) and this Memorandum and Order.  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's motion for injunctive relief.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on each Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 3) and Plaintiff's motion for TRO/preliminary injunction (Doc. 5).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties*

*consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 28, 2014**

*s/ J. Phil Gilbert*
United States District Judge